[No. 3731-1.    Division One.    January 19, 1976.]

*In the Matter of the Welfare of*
BABY BOY MAY.

*Faye Sutton* of *Seattle-King County Public Defender*, for appellant (appointed counsel for appeal).

*Slade Gorton, Attorney General*, and *Bruce P. Clausen, Assistant*, for respondent.

ANDERSEN, J.—

## FACTS OF CASE

This case is before us on certiorari to review a juvenile court order permanently depriving a mother (petitioner) of the custody of her newborn son. CAROA 57(b)(3).

Petitioner was 14 years of age at the time her child was born and 15 years old at the time of these proceedings.

Petitioner had herself been adjudged a dependent child under the Juvenile Court Law, RCW 13.04, prior to the birth of her child.

Before the child was born, but not after, petitioner had a history of running away from home, school, juvenile authorities and from responsibility generally. She committed a shoplifting offense and had been detained by the juvenile court at the time her child was born on January 22, 1975.

Immediately following his birth, petitioner's baby was removed to a foster home and a dependency petition filed with respect to him. Then on March 3, 1975, the deprivation proceedings here involved were commenced. On April 3, 1975, findings of fact and conclusions of law were entered which elaborated on the foregoing. Based thereon, an order was entered on that same date by the juvenile court permanently depriving petitioner of all parental rights and interest in her child. The baby was at the same time adjudicated a dependent child.

A review of the entire record herein clearly establishes two things. First, aside from about three short visits when her child was brought to her by a caseworker, petitioner was never given the opportunity to stand in a parent-child relationship to her young son. Second, the deprivation was essentially based on the opinion of professionals in the field that because of petitioner's youth and her conduct before she had the child, she was unlikely to become a good parent. It was, therefore, reasoned that the welfare of the child would best be served by immediately and permanently taking him from the mother and keeping him in a foster home or making him available for adoption.

## ISSUE

The ultimate issue in this case is whether those of the juvenile court's findings which are based on substantial evidence sustain the conclusion of law that the petitioner should be permanently deprived of her child.

## DECISION

CONCLUSION. The juvenile court erred in concluding that the mother should be permanently deprived of her baby.

■ A fundamental premise on which our society is based is that courts will zealously guard the integrity of the parent-child relationship. *In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969). A parent's right to the custody and control of his or her minor child will not be abridged except for the most powerful reasons. *In re Day*, 189 Wash. 368, 382, 65 P.2d 1049 (1937).

Since before the turn of the century, the policy of Washington law in deprivation of child custody cases has been clear:

> While it is true that the welfare of the child should be the first consideration of the court, yet the right of the parent is not to be disregarded, and it is assuming a grave responsibility to deprive parents of the care, control, custody and education of their children because they do not come up to the standard of perfection that we have established for our own action in that respect. There is, perhaps, scarcely a day but that children may be seen who, in the ordinary estimation, are neglected, and of whom the popular verdict would declare, that they would be better off and stand a better chance of becoming useful members of society if they were removed from the pernicious influence of their parents. Yet it would not do for that reason to interfere with the domestic relations, or to set up our particular standard for the guidance of families in general. There is such a diversity of religious and social opinion and of social standing and of intellectual development and of moral responsibility in society at large, that courts must exercise great charity and forbearance for the opinions, methods and practices of all different classes of society; and a case should be made out which is sufficiently extravagant and singular and wrong to meet the condemnation of all

decent and law-abiding people without regard to religious belief or social standing before a parent should be deprived of the comfort or custody of a child.

*Lovell v. House of the Good Shepherd*, 9 Wash. 419, 422, 37 P. 660 (1894). Some of the language in *Lovell* may appear quaint in this day, but the principles there enunciated are as fundamental now as they were in 1894.

We believe our research has led us to every appellate opinion in this state which involves permanent deprivation of child custody. We have found no case where, under comparable facts, a natural parent has been permanently deprived of his or her child.

This is not a case in which the parent has abandoned the child. The petitioner herein wants to keep and raise her own child, as do an increasing number of young people who have children out of wedlock. Indeed, the one star of constancy in petitioner's young life has been her desire to have the baby and her fight to keep it.

Neither is there any suggestion in the present case that on her visits with the child the petitioner was cruel, abusive, or neglectful toward him. No evidence was presented that petitioner is psychotic or addicted to drugs or alcohol. To the contrary, the testimony was that she is a bright, healthy young woman with a good healthy baby. As counsel also advised this court at the time of oral argument, petitioner is presently living at home with her mother.

Our courts have emphatically repudiated the concept that all children are wards of the State and that the State and its agencies have an unhampered right to determine what is best for a child. *In re Warren*, 40 Wn.2d 342, 343, 243 P.2d 632 (1952). A natural parent cannot be deprived of parental rights, including custody and control, unless his or her conduct has been such, or the duty to care for and protect the child has been so violated, that such rights have been abdicated or forfeited. *In re Petrie*, 40 Wn.2d 809, 811, 246 P.2d 465 (1952). There has been no such showing here.

It may very well be, as the social workers and psychiatrists opined below, that the odds do not favor that a peti-

tioner of this youth and history of avoiding responsibility will become a good parent. Fortunately for the preservation of the human species, however, a lot of people who would rate poorly on any scale of parental prospects have done rather well at it when confronted by the reality of a baby, in a crib, in the home.

All of the professional witnesses who testified below were agreed that the petitioner did have a chance to develop into a good parent with the assistance of the public and private resources available in the community. We perceive it to be the law, and it is the holding of this court, that the petitioner and her baby are entitled to have that chance.

■ Clear, cogent, and convincing evidence is necessary to sustain an order permanently depriving a parent of the care, custody, and control of his or her child. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973). That burden has not been met here. The findings of fact which are supported by substantial evidence do not sustain the conclusion of law that the petitioner should be permanently deprived of her parental rights or the deprivation order based thereon as they must. *In re Sego, supra* at 743; *In re Price,* 13 Wn. App. 437, 439, 535 P.2d 475 (1975).

That portion of the juvenile court's order of April 3, 1975, providing that the petitioner shall be permanently deprived of her child, is reversed. The portion of the same order which adjudged the baby to be a dependent child within the contemplation of the Juvenile Court Law, not having been appealed from, shall stand.

WILLIAMS, C.J., and CALLOW, J., concur.

Petition for rehearing denied May 4, 1976.

Review denied by Supreme Court July 27, 1976.