[No. 44093. En Banc. September 2, 1976.]

*In the Matter of the Welfare of* BABY BOY BECKER.
CARL C. FREDERICKSON, ET AL, *Petitioners*, v. CHERYL A.
BECKER, *Respondent.*

*Willard J. Wright* and *William D. Rives* (of *Davis, Wright, Todd, Riese & Jones*) and *Robert A. Castrodale,* for petitioners.

*Collins & Hansen* and *Nels A. Hansen,* for respondent.

DOLLIVER, J.—Cheryl Becker gave birth to a son on April 11, 1975, in Chico, California. She was not married to the natural father of the child. Prior to the birth of the child, Cheryl Becker indicated to her mother she did not want to keep the baby. Her mother contacted a friend, Beverly Jean Roberts, who got in touch with Carl and Rebecca Frederickson, residents of the state of Washington. The Fredericksons indicated a desire to adopt the child. During February 1975, the Fredericksons learned Ms. Becker had received no medical attention and committed themselves to paying all her medical expenses. They eventually incurred medical and other expenses amounting to $1,357.24.

On April 13, 1975, Ms. Becker signed a hospital form releasing the infant to Beverly Roberts for "adoption planning." The form expressly retained parental rights to custody and control of the child. On April 14, 1975, the Fredericksons received the child from Ms. Roberts and, in good faith, brought the child into Washington State. On the same day, Cheryl Becker decided she wanted to keep her baby and began efforts to locate the child. On May 8, 1975, in Grant County, Washington, Ms. Becker petitioned the Superior Court for a writ of habeas corpus pursuant to RCW 7.36.020, which states:

> Writs of habeas corpus shall be granted in favor of parents, guardians, spouses, and next of kin, and to enforce the rights, and for the protection of infants and insane persons; and the proceedings shall in all cases conform to the provisions of this chapter.

On May 9, 1975, the Fredericksons filed a dependency petition pursuant to RCW 13.04.060, which states:

> Any person may file with the clerk of the superior court a petition showing that there is within the county, or residing within the county, a dependent or delinquent child and praying that the superior court deal with such child as provided in this chapter: *Provided,* That in counties having paid probation officers, such officers shall, as far as possible, first determine if such petition is reasonably justifiable. Such petition shall be verified and shall contain a statement of facts constituting such dependency or delinquency, as defined in RCW 13.04.010, and the names and residence, if known to the petitioner, of the parents, guardian, or custodian of such dependent or delinquent child. There shall be no fee for filing such petitions.

The habeas corpus petition and the dependency petition were consolidated for hearing in the superior court.

The trial judge entered the following finding of fact:

> The circumstances of the release of the child from the hospital and the behavior of the natural mother and her family prior to the birth of the child and after the birth of the child raise a sufficient question as to the fitness and propriety of the natural mother to have the child to warrant a hearing on the merits of that question; or at

least to ascertain that the demand for the return is not as precipitous and ill-conceived as the original release of the child.

The court found it had no jurisdiction to inquire into the fitness of the mother and ordered delivery of the child to the natural mother after pendency of this appeal, as well as a judgment for the petitioners of $1,357.24. The court dismissed the dependency petition, holding that the child is not a "dependent child" which must be established before the court has authority to act, and that it had no basis to inquire into the fitness of the mother because she had never had the opportunity to exercise parental rights. At no time during the proceedings was there a guardian ad litem appointed to protect the welfare of the child.

The Court of Appeals affirmed the granting of the habeas corpus petition, stating that the Fredericksons had no legal right to the child and, consequently, no standing in a habeas corpus proceeding. The court held that the Superior Court did have jurisdiction to entertain the petition but sustained dismissal of the dependency petition.

We granted the Fredericksons' petition for review to consider the following questions: (1) In a habeas corpus proceeding, is it proper to deny a hearing into the fitness of the natural parent because of the absence of legal rights on the part of the opposing party? and (2) Is there an inadequate basis to determine dependency under RCW 13.04.010(1)-(3) because the parent has never had custody of the child?

■■ As to the first question, petitioners contend that the Court of Appeals' decision not to allow a hearing on Cheryl Becker's fitness and the child's welfare is in conflict with two Supreme Court decisions, *In re Day*, 189 Wash. 368, 65 P.2d 1049 (1937), and *In re Allen*, 139 Wash. 130, 245 P. 919 (1926). In both *Allen* and *Day*, this court held that the welfare of the child is the paramount consideration in a habeas corpus proceeding; that, while the primary right of a parent to the custody of a child must be considered, the parents' rights must yield to the child's interests when the two are in conflict. While neither *Allen* nor *Day* require

that a hearing be held on the issues of parental fitness and child welfare in every habeas corpus proceeding, we hold that, under the facts of this case, the Superior Court abused its discretion in not holding such a hearing. The finding of fact quoted above exposes the necessity of a hearing to determine the fitness of the parents and to protect the welfare of the child.

The Court of Appeals held that, in the absence of a showing by the Fredericksons that they possessed a legal right to the custody of the child, no determination as to the fitness of the parent may be made. The court points out that the petitioners are "neither parents, guardians, spouses nor next of kin." *See* RCW 7.36.020. While this provision specifies who may commence a habeas corpus proceeding, it does not limit the scope of the inquiry. RCW 7.36.020 is not a barrier to an inquiry into parental fitness or child welfare. *See In re Day, supra; In re Allen, supra; In re Ward*, 39 Wn.2d 894, 896, 239 P.2d 560 (1952); *Fitzgerald v. Leuthold*, 30 Wn.2d 402, 192 P.2d 371 (1948).

The Court of Appeals cited *Lovell v. House of Good Shepherd*, 9 Wash. 419, 37 P. 660 (1894), as authority for the proposition that the Fredericksons have no standing to question the fitness of the natural parent. *Lovell* indicates that, since the respondent in that case, a corporate "orphan asylum," had no legal rights to the custody of the child, "it matters not whether the parents were competent custodians or not, *so far as the respondent is concerned.*" (Italics ours.) The court, nevertheless, reviewed the evidence to determine whether the mother should be deprived of custody and a guardian appointed. The court in *Lovell* recognized, as we do here, that it had a responsibility to the child beyond determining the legal rights of the disputing parties.

Judge Benjamin N. Cardozo, later Justice Cardozo, commented on the role of the judge in a case involving the interests of a child:

The chancellor in exercising his jurisdiction . . . does not proceed upon the theory that the petitioner,

whether father or mother, has a cause of action against the other or indeed against any one. . . . He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights "as between a parent and a child" or as between one parent and another . . . Equity does not concern itself with such disputes in their relation to the disputants. Its concern is for the child.

*Finlay v. Finlay*, 240 N.Y. 429, 433-34, 148 N.E. 624, 40 A.L.R. 937 (1925).

According to the Superior Court's finding of fact, the circumstances of the release and the behavior of the natural mother and her family warrant a hearing. Although a hearing was found to be warranted, it was not held because of the Fredericksons' lack of legal rights to the child. If the protection of a child's interests is dependent upon the "legal rights" of the persons opposing the petition, the ability of the court to discharge its responsibility to the child would be seriously impaired. The trial court is not prohibited from fulfilling this responsibility by the parties' legal disabilities.

Regarding the second issue raised by the petitioners, respondent argues that an inquiry into the child's dependency is precluded because the facts alleged are insufficient to bring him within the definition of the statute. RCW 13.04.010 states, in part:

This chapter . . . shall apply to all minor children under the age of eighteen years who are delinquent or dependent; and to any person or persons who are responsible for or contribute to, the delinquency or dependency of such children.

For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:

(1) Who has no home or any settled place of abode, or any proper guardianship, or any visible means of subsistence; or

(2) Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or

(3) Whose home by reason of neglect, cruelty or depravity of his parents or either of them, or on the part of his guardian, or on the part of the person in whose custody or care he may be, or for any other reason, is an unfit place for such child . . .

We agree with the Court of Appeals that the Superior Court did have jurisdiction to entertain the petition for a dependency hearing. However, we disagree that there were sufficient facts before the court, without a hearing, to make a determination of dependency. In RCW 13.04.010 (2) one of the tests for a "dependent child" is one "who has no parent or guardian willing to exercise, or *capable of exercising*, proper parental control". (Italics ours.) The finding of the trial court previously cited clearly establishes that a hearing is warranted on the question of whether the natural mother is able to exercise proper parental control. We believe the trial court was in a far better position to make this determination than the Court of Appeals or this court. Since we hold with the Court of Appeals that the trial court has jurisdiction, the dependency hearing should be held.

This court has repeatedly stated that the goal of a dependency hearing is to determine the welfare of the child and his best interests. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973); *see In re May*, 14 Wn. App. 765, 545 P.2d 25 (1976). Under the circumstances of this case, the Superior Court should have considered all factors relevant to this issue. It is not excused from fulfilling this responsibility by the absence of a demonstrated custodial relationship between the parent and the child. *In re a Minor*, 39 Wn.2d 744, 238 P.2d 914 (1951); *In re Sego, supra; In re Day, supra.* Furthermore, the applicable statute clearly speaks to the welfare of the child.

No dependent or delinquent child as defined in this chapter shall be taken from the custody of its parent, parents or legal guardian, without the consent of such parent, parents or guardian, unless the court shall find such parent, parents or guardian is incapable or has failed or neglected to provide proper maintenance, training and

education for said child; or unless said child has been tried on probation in said custody, and has failed to reform, *or unless the court shall find that the welfare of said child requires that his custody shall be taken from said parent or guardian.*

(Italics ours.) RCW 13.04.140.

 Historically, the natural parent's right to custody of a child as against third persons has been absolute, barring a showing of unfitness. *In re Smith*, 118 Wash. 1, 202 P. 243 (1921); *In re Mead*, 113 Wash. 504, 194 P. 807 (1920). Growing concern for the welfare of the child and the disappearance of the concept of the child as property has led to a gradual modification in judicial attitude. *See* Sayre, *Awarding Custody of Children*, 9 U. Chi. L. Rev. 672 (1942); *cf.* Pound, *A Survey of Social Interests*, 57 Harv. L. Rev. 1 (1943). An extreme approach to determining the welfare of a child could lead to a redistribution of the minor population among selected members of the community, a project the courts have correctly declined to undertake. *See In re May, supra; Lacher v. Venus*, 177 Wis. 558, 188 N.W. 613 (1922). Too, the courts must avoid merely engaging in the comparison of differing life-styles. *E.g., Painter v. Bannister*, 258 Iowa 1390, 140 N.W.2d 152, *cert. denied*, 385 U.S. 949, 17 L. Ed. 2d 227, 87 S. Ct. 317 (1966).

While our statutes and judicial opinions may set forth the goal, the criteria for establishing the best interests for the welfare of the child are conspicuous by their absence. The complexity of the cases and the need for careful individual treatment militates against the mandatory consideration of certain specified factors in every case. *See* J. Goldstein, A. Freud, A. Solnit, *Beyond the Best Interests of the Child*, (1973); Watson, *The Children of Armageddon: Problems of Custody Following Divorce*, 21 Syracuse L. Rev. 55 (1969-70); Comment, *A Child's Right to Independent Counsel in Custody Proceedings: Providing Effective "Best Interests" Determination Through the Use of a Legal Advocate*, 6 Seton Hall L. Rev. 303 (1975); *Alternatives to "Parental Right" in Child Custody Disputes Involving Third*

*Parties*, 73 Yale L.J. 151 (1963). Nevertheless, the courts have broad discretion and are allowed considerable flexibility to receive and evaluate all relevant evidence in reaching a decision that recognizes both the welfare of the child and parental rights.

We reverse and remand this case for a hearing to determine the parental fitness of Cheryl Becker and the best interest for the welfare of Baby Boy Becker. A guardian ad litem shall be appointed to represent the child during these proceedings.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.