**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | No. 80490-1-I |
| | ) | |
| J.D.P. and J.D.P., | ) | DIVISION ONE |
| | ) | |
| Minor Children. | ) | PUBLISHED OPINION |
| | ) | |

MANN, C.J. — Amber Heilman-Blanton and Anthony Parker, the biological parents of Jae and Jav, appeal the trial court's order terminating their parent-child relationships with their two youngest children.[1]  They argue that the court violated their right to due process by excluding evidence of the sibling relationships as part of the termination trial, that the Department of Children, Youth, and Families (Department) failed to provide Heilman-Blanton with all the necessary services required in a termination proceeding, and that the best interests of the child statute is unconstitutionally vague as applied to the facts of the case.  We affirm.

---

[1] The two children who are the subject of this appeal share the initials J.D.P.  We refer to them as Jae and Jav.  Their two older siblings are referred to collectively as "the older siblings" and individually as J.A. and A.E.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Heilman-Blanton and Parker were married and have four children together: J.A. A.E., Jae, and Jav. At the time of the termination trial, the children were 14 years old, 10 years old, 3 years and 7 months, and 1 year and 9 months, respectively.

The parents first became involved with the Department in connection with the older siblings. J.A. was dependent from October 2007 to May 2008 and then returned home. A.E. was dependent from March 2012 to March 2015 and then returned home. In July 2015, the older siblings were living with their paternal grandmother; the parents' whereabouts were unknown. The older siblings were taken into protective custody in late July 2015 after they reported abuse by their grandmother.

Jae was born exposed to opiates in October 2015. The mother used heroin two days prior to Jae's birth and was hospitalized for drug-withdrawal several times during her pregnancy. Although the court originally placed Jae with his father, he was arrested two days later for drug possession, theft, and counterfeiting. The father was arrested again a month later on multiple warrants, a new drug charge, and forgery. The mother also had a lengthy criminal history, including convictions for drug use and delivery, counterfeiting, drug possession, prostitution, and identity theft. The mother agreed to an order of dependency on August 22, 2016, and the father agreed to an order of dependency on March 2, 2016. Both parents were in custody at the time the dependency orders were entered. Except for the brief time he was with the father prior to his arrest, Jae has never lived with his parents.

While the parents did not visit A.E., J.A., or Jae, for almost a year, they had progressed in services and resumed visitation by the summer of 2016. The court placed J.A. with the parents in May 2017. The parents had overnight unsupervised visits with A.E. and Jae during this time.

Jav was born in September 2017 and resided with his parents for the first two-and-a-half months of his life, as the parents were complying with the required services under the dependencies of the older children. On November 15, 2017, U.S. Marshals executed federal arrest warrants on the parents for failure to comply with their conditions of release. J.A. and Jav were at the home. The Marshals discovered Jav in a bedroom with a plastic bag containing a black, sticky, tar-like substance, later identified as heroin. Both parents were incarcerated, and the Department subsequently filed a dependency petition for Jav. The court declared Jav dependent as to the mother on March 2, 2018, and declared Jav dependent as to the father on April 3, 2018.

While the parents had periods of compliance with services, they have been unable to maintain sobriety, be free from criminal activity, or keep a stable home. In the dependency cases of Jae and Jav, the mother agreed to 90 days of weekly urinalysis (UA) tests, to complete a new drug and alcohol evaluation and to follow the treatment recommendations, to attend parenting classes, to complete a psychological evaluation with a parenting component, and to continue to follow the treatment recommendations in place in the dependencies of the older siblings.

The mother received multiple referrals to conduct the UAs, but failed to show up three times. The mother's probation was revoked for violations including missed treatments and UAs and cocaine use. A warrant was issued for her in October 2018

and March 2019. She was further found not in compliance based on the allegations of possession of heroin and reckless endangerment of a child from the execution of the warrant. The mother violated her federal probation when she used methamphetamine in January 2017 and consumed alcohol in July 2017. The Department offered her parenting classes, bus tokens, and ORCA cards throughout the dependencies.

The State referred the mother to three different providers to complete her psychological evaluation. The State referred her to Dr. Dana Harmon but the mother terminated the visit. The State referred her to an evaluation with Dr. Lauren McCollom but she refused to complete the required re-testing. The State also referred her to Dr. Steve Tutty and she completed the initial testing, but she did not complete the parent-child observation prior to being remanded into custody.

Additionally, Family Treatment Court (FTC) accepted the mother in August 2018. She agreed to remain drug and alcohol free, to engage in random drug tests, and to attend two sober support meetings a week. FTC discharged her in April 2019 after she missed UAs, failed to obtain a drug and alcohol assessment, was not in treatment, and did not sign releases of information.

Jae and Jav were placed together with foster parents and have never been returned to the biological parents' care. After the parents' arrests, the older siblings were placed with the mother's fictive aunt, Dayna Hicks, in Philadelphia. After a year living with Hicks, J.A. disrupted his placement and returned to Washington, where he lacked a permanent placement. A.E. remained in Philadelphia with Hicks. The older siblings remain dependent and have had periods of infrequent contact with Jae and Jav.

The Department filed for termination of parental rights to Jae and Jav in December 2018.  Prior to trial, the parents subpoenaed Jae and Jav's foster parents for depositions.  They argued that "the foster parents' testimony is relevant to inform the court about the siblings' prospects for continued communication and relationships if the court determines that severing the sibling relationship via termination of the parent-child relationship should occur."  The Department and the children's Court Appointed Special Advocate (CASA), Eddie Hill, moved to quash the subpoenas, arguing that sibling relationships were not at issue in the termination.  On January 8, 2019, the trial court agreed and quashed the subpoenas after finding that the foster parents were not "likely to have information that is likely to lead to any relevant information to the pending termination matters or dependency review cases, even under the liberal discovery rules outlined in CR 26."

In May 2019, the older siblings moved to intervene in the termination proceeding.  The parents supported these motions and argued that the trial court should hear evidence about the sibling bonds when determining whether termination of parental rights was in the best interests of Jae and Jav.  The Department and CASA opposed intervention.  On May 26, 2019, the trial court denied the motions to intervene, after weighing the requirements for permissive intervention under CR 24, and finding that "the siblings have failed to articulate a common question of law or fact that would support intervention."  The court further explained that "concerns about ongoing sibling contact are best addressed in other proceedings, namely the dependency."

The mother identified Dr. JoAnne Solchany as a potential expert witness who would testify about the best interests of the children, their relationship with their parents

and their siblings, as well as their current bond and current placements. The court excluded the testimony, finding that "[a]ny evidence about the longevity and future of the sibling communication, visits or relationship is not relevant in determining whether the Department has met its burden of proving termination under RCW 13.34.180 and.190, and current unfitness." The court limited the evidence about sibling relationships to RCW 13.34.200(3).

The termination trial was held over nine days in June and July 2019. Both parents had relapsed on illegal substances in February 2019. During the termination trial, both parents were incarcerated, but were present at trial and represented by counsel.

The trial court considered the testimony of both parents, two primary social workers involved in the case, the CASA, and limited testimony on behalf of the mother by Dr. Solchany. Consistent with pretrial rulings, the trial court sustained objections from the Department and CASA during the trial when the parents attempted to bring up sibling bonding and placement through other witnesses. Some testimony was allowed in on basic facts about where each sibling lived and the frequency of current contacts with each other.

The trial court terminated the rights of both parents to Jae and Jav. The court found that the Department offered and provided the services ordered under RCW 13.34.136, but both parents failed to comply with their court ordered services. The court found that "any progress made by the parents in correcting their parental deficiencies has been minimal to date. These parental deficiencies, which directly relate to their ability to parent [Jae and Jav] . . . include failure to satisfactorily address issues related

-6-

to their substance use and addiction, undiagnosed mental health disorders, and failure to remain out of incarceration."

Both parents appealed.[2] The father passed away while this appeal was pending.[3]

## ANALYSIS

Termination may be ordered when the six statutory elements of RCW 13.34.180(1)(a) through (1)(f) are established by clear, cogent, and convincing evidence.[4] RCW 13.34.190(1)(a). The clear, cogent, and convincing evidence standard is satisfied when a court determines that the ultimate fact at issue is shown to be "highly probable." In re Welfare of Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). The court must also find by a preponderance of the evidence that termination is in the best interests of the child. RCW 13.34.190(2); In re Dependency of H.W., 92 Wn. App.

---

[2] The CASA filed a brief in support of the Department. The parents object to our consideration of the CASA's brief. Although we declined to consider a guardian ad litem (GAL) brief in Matter of W.W.S., 14 Wn. App. 2d 342, 351, 469 P.3d 1190 (2020), our holding does not indicate that we will never consider brief from a GAL or CASA. This court has the discretion to consider briefs from nonparties. RAP 10.1(h). In an exercise of discretion, we have reviewed the CASA's brief.

[3] The Department moved to dismiss the father's appeal for mootness. "Generally, this court will not review a moot case; but we will review the case if it presents issues of continuing and substantial public interest. In re Dependency of Z.J.G., 196 Wn.2d 152 n.7, 161, 471 P.3d 853 (2020). While we agree with the Department that we cannot grant the father relief, we have considered his briefing and argument.

[4] The six statutory elements in RCW 13.34.180(1) are:
    (a) That the child has been found to be a dependent child;
    (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
    (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
    (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
    (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . ., and
    (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

420, 425, 961 P.2d 963 (1998). The preponderance of the evidence standard is satisfied when the findings of fact are supported by "substantial evidence," which is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise. Ridgeview Props. v. Starbuck, 96 Wn.2d 716, 719, 638 P.3d 1231 (1982). Whether termination is in a child's best interests must be determined by the unique facts of each case. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

In a termination proceeding, the trial court is afforded broad discretion and its decision is entitled to great deference on review. In re Dependency of A.M., 106 Wn. App. 123, 131, 22 P.3d 828 (2001). The deference paid to a trial judge's advantage in having the witnesses before it is particularly important in termination proceedings because only a trial court can observe a witness's demeanor. Sego, 82 Wn.2d at 739-40.

A. Evidence of Sibling Relationships

The parents argue that the trial court violated their right to present a defense by excluding evidence of the sibling relationships. This includes the trial court's decisions limiting the testimony of Dr. Solchany, denying intervention of the older siblings, and quashing subpoenas for the foster parents.

"The due process clause of the Fourteenth Amendment protects a parent's right to the custody, care, and companionship of her children," a right which "cannot be abridged without due process of law." In re Welfare of Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992). In assessing whether a parent has been provided with a procedure that comports with the requirements of due process, courts consider "(1) the parents'

interests; (2) the risk of error created by the State's chosen procedure; and (3) the State's interest." Key, 119 Wn.2d at 611; Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976). "[T]he State and the child have a strong interest not only in establishing a stable and permanent home for the child, but also doing it as soon as possible." In re Dependency of C.R.B., 62 Wn. App. 608, 615, 814 P.2d 1197 (1997); see also RCW 13.34.020 ("The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.").

At a minimum, "[d]ue process requires that parents have notice, an opportunity to be heard, and the right to be represented by counsel." Key, 119 Wn.2d at 611. Due process also requires that "parents have the ability to present all relevant evidence for the juvenile court to consider" before terminating parental rights. In re Welfare of R.H., 176 Wn. App. 419, 425-26, 309 P.3d 620 (2013). At issue here, is whether the parents were deprived of their right to present relevant evidence.

We review questions concerning the admissibility of evidence in a dependency proceeding for an abuse of discretion. In re Interest of J.F., 109 Wn. App. 718, 728, 37 P.3d 1227 (2001). Although we disagree with the State's argument that evidence of a sibling relationship is never relevant at termination, here, the trial court did not abuse its discretion by barring evidence of Jae and Jav's relationship with their older siblings beyond the evidence necessary for the statement on sibling relationships as required by RCW 13.34.200(3).

-9-

1.  Juvenile Courts Act

The mother argues that the Juvenile Courts Act (Act), ch. 13.34 RCW, as a whole reflects the importance of sibling relationships throughout various provisions. The mother's argument fails to acknowledge that there are separate phases in the Act with different purposes and requirements. Her citations are to dependency and placement requirements; not terminations. The termination provisions are in place as an alternative to dependency, for when the family unit no longer serves the best needs of the child as set forth in RCW 13.34.020.[5] Requirements for dependency proceedings are not the same as for termination proceedings:

> A dependency proceeding and a termination proceeding have different objectives, statutory requirements, and safeguards. In re Hiebert, 28 [Wn. App.] 905, 908, 627 P.2d 551 (1981); compare RCW 13.34.130 with RCW 13.34.180 and RCW 13.34.190. The key difference is the dependency hearing is "a preliminary, remedial, nonadversary proceeding" that does not permanently deprive a parent of any rights. In re A.W., 53 [Wn. App.] 22, 30, 765 P.2d 307 (1988), review denied, 112 [Wn.2d] 1017 (1989). A finding of dependency does not inevitably lead to a termination of parental rights. In re [Welfare of] Churape, 43 [Wn. App.] 634, 639-40, 719 P.2d 127 (1986) (fact that child in long-term foster care not determinative in deciding whether to terminate parental rights). In re J.P.'s focus is solely on termination proceedings. Its reasoning does not apply to dependency proceedings.

Key, 119 Wn.2d at 609.

---

[5] RCW 13.34.020 provides:

The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized. When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail. In making reasonable efforts under this chapter, the child's health and safety shall be the paramount concern. The right of a child to basic nurturing includes the right to a safe, stable, and permanent home and a speedy resolution of any proceeding under this chapter.

The statutes cited by the mother all seek to preserve and strengthen family ties within the dependency or permanent placement portions of the Act.  See RCW 13.34.060 (shelter care provider must be willing to facilitate visitation with siblings); RCW 13.34.065 (during shelter care hearing, court must inquire into the terms and conditions for sibling visitation); RCW 13.34.130 (after a finding of dependency the department may consider placement with sibling); RCW 13.34.138 (permanent placement plan of care must include steps to promote existing sibling relationships and/or placement together); RCW 13.34.145 (permanency placement planning hearing must consider sibling relationships); RCW 13.34.210 (when a child is not immediately adopted after termination, Department must take reasonable steps to ensure sibling relationships); and RCW 13.34.260 (preferences for sibling relationships must be considered when matching children to foster homes).  These dependency and placement requirements are distinct from the termination requirements in RCW 13.34.180(1) and .190(1)(b).

In contrast with dependency and placement requirements, the status of sibling relationships is not included within the six required elements of RCW 13.34.180(1) or RCW 13.34.190(1)(b).  This is because the termination proceeding is focused solely on whether the parental relationship should be terminated as to the children involved in the proceeding.  Just because the parents might have other children that were previously placed in separate households, those separate placements cannot form a basis for denying termination where the needs of the children involved in the termination before

the court are not being met.  Sibling relationships are addressed during dependency,

placement, and adoption—not during a termination.[6]

    2.  RCW 13.34.200(3)

The mother next argues that RCW 13.34.200(3) provides an independent

specific requirement for the court to consider sibling relations as part of the termination

proceeding.  RCW 13.34.200(3) states

> An order terminating the parent-child relationship shall include a statement
> addressing the status of the child's sibling relationships and the nature
> and extent of sibling placement, contact, or visits.

RCW 13.34.200(3) must be interpreted from its ordinary meaning, within the

context of the statute, related provisions, and the statutory scheme as a whole.

Christensen v. Ellsworth, 162 Wn.2d 365, 373, 172 P.3d 228 (2007).  Unlike RCW

13.34.190(1)(a) and (b), which require the trial court to make findings that the

requirements of RCW 13.34.180(1) are established by clear and convincing evidence,

and a finding that termination is in the best interests of the child, RCW 13.34.200(3) is a

separate provision.  As discussed above, the status of sibling relations is not a required

element to support a termination finding.  Instead, RCW 13.34.200(3) requires only that

the trial court include a statement in the termination order concerning the status of

sibling relationships.  Unlike the required findings in RCW 13.34.190(1)(a) and (b), RCW

13.34.200(3) is more akin to a ministerial requirement that ensures that the termination

---

[6] Indeed here, after the order terminating the parental rights was entered, A.E. moved that Jav and Jae be placed with him under the care of Dayna Hicks. While the Department and CASA advocated for Jav and Jae to remain with the foster parents, the trial court granted A.E.'s motion and concluded that it was in the best interests of the children to be placed with Hicks.

order acknowledges the existence and status of sibling relationships. Here, the trial court included just such a statement:

> The status of the children's sibling relationships and the nature and extent of sibling placement, contact, or visits is as follows: the older siblings remain dependent and visitation is ordered in the dependency matters. [Jav and Jae] have had infrequent contact with their two older brothers; some of this contact has been by telephone or video/skype services. One of the two older brothers lives in Pennsylvania and the other was most recently out of state in Mississippi for a month or had been on the run from his ordered placement here in King County.

RCW 13.34.200(3) does not create an independent requirement that the trial court consider sibling relationships in making the required findings in RCW 13.34.190(1)(a) and (b) necessary for termination. The trial court did not abuse its discretion in excluding testimony of sibling relationships over that required to make the statement required by RCW 13.34.200(3).

### 3. Best Interests of the Child

The parents argue that the best interests of the child analysis required by RCW 13.34.190(1)(b) necessarily encompasses all relevant considerations, including the sibling relationship.

The Department must prove that termination is in the best interests of the child under RCW 13.34.190(1)(b) by a preponderance of the evidence. In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016). "The criteria for establishing the best interests of the child are not capable of exact specification because each case is largely dependent upon its own facts and circumstances." In re Dependency of J.S., 111 Wn. App. 796, 804, 46 P.3d 273 (2002). Due to the individual facts of each case, "the courts have broad discretion and are allowed considerable flexibility to receive and

evaluate all relevant evidence in reaching a decision that recognizes both the welfare of the child and parental rights." In re Welfare of Becker, 87 Wn.2d 470, 478, 553 P.2d 1339 (1976).

The parents again muddle the termination proceeding with the distinct issues of dependency, placement, and adoption. A child's best interests in the dependency context include the right to a safe and suitable placement and require comparisons of alternative living situations. RCW 13.34.130; RCW 13.34.136(2) and (6); RCW 13.34.145(1), (4), (8), and (15). In adoption proceedings, the best interests analysis includes evaluation of how potential adoptive parents will deal with a child's relative connections. RCW 26.33.190; RCW 26.33.240. Neither of these standards address the best interests of a child at termination, which focuses on whether the parent-child relationship should continue. In re Dependency of A.W., 53. Wn. App. 22, 33, 765 P.2d 307 (1988) (termination is "fully justified" as in child's best interests when balancing parent's inability to improve verses leaving child "in limbo . . . for an indefinite period").

While there might be situations where the best interests of the child mean keeping a parent involved with a child in order to facilitate a sibling relationship, this is not the case here. The trial court clearly considered all relevant evidence, including recognizing Jae and Jav's sibling relationships. Here, the uncontested finding of the trial court indicated that (1) Jae and Jav were unlikely to return to their parents' care in the near future; (2) both parents testified that they were not in a position to parent; (3) neither parent, during extended times when they were not incarcerated visited Jae and Jav or engaged in court ordered services; (4) the children had visited sporadically with their two older siblings, both of whom were out of state and one on the run from care at

-14-

the time of termination; (5) Jae and Jav were adoptable and had prospects for adoption into a stable and permanent home; (6) the parents were unfit to parent; and (7) Jae and Jav's "physical and psychological health would be at risk if they were placed with either parent at this time."

While a trial court could abuse its discretion by not considering <u>any</u> evidence of the sibling relationship, the trial court did not abuse its discretion in this case by concluding additional evidence of the sibling relationships in this case was irrelevant to the termination proceedings, and therefore denying the older siblings' motion to intervene, quashing the subpoenas for the foster parents, and limiting the expert testimony on sibling relationships.[7]

The parents were provided notice, an opportunity to be heard, the right to be represented by counsel, and the right to present relevant evidence.  The parents were not deprived of due process.

B.  <u>Related Rulings</u>

The mother raises as separate claims that the trial court erred in denying the older siblings' motion to intervene and by quashing subpoenas for the foster parents. We disagree.

1.  <u>Intervention</u>

Civil Rule 24 governs motions to intervene in dependency and termination proceedings.  <u>In re Dependency of J.H.</u>, 117 Wn.2d 460, 467, 815 P.2d 1380 (1991).

---

[7] Amici King County Department of Public Defense and Washington Defenders Association raised additional arguments about how the children's relationships and racial identity should be considered under the best interests standard.  While we recognize the importance of the concerns raised, here, neither parent raised this issue on appeal.  We will not address arguments only raised in amicus briefs, and not addressed by the appellant.  <u>City of Seattle v. Evans</u>, 184 Wn.2d 856, 861 n.5, 366 P.3d 906 (2015).

CR 24(a)(2) allows intervention as a matter of right where the party seeking to intervene establishes "(1) timely application for intervention; (2) an applicant claims an interest which is the subject of the action; (3) the applicant is so situated that the disposition will impair or impede the applicant's ability to protect the interest; and (4) the applicant's interest is not adequately represented by the existing parties." Westerman v. Cary, 125 Wn.2d 277, 303, 892 P.2d 1067 (1994). We review a denial of a motion to intervene as a matter of right for error of law. Westerman, 125 Wn.2d at 302.

The mother fails to demonstrate that the trial court erred as a matter of law. While certainly the older siblings may have a natural interest in the fate of their younger siblings, as discussed above, the Act focuses on the interests of siblings in the dependency and placement proceedings, not in termination proceedings. There is already a forum for the older dependent siblings to address their relationships with the younger siblings: their own dependency proceedings. A dependent child's contact with siblings is addressed in the statutes describing dependency procedures, not termination procedures. Compare RCW 13.34.130(1)(b)(iii) and RCW 13.34.130(6) (order of disposition for a dependent child); RCW 13.34.136(2)(b)(ii)(A) and RCW 13.34.136(g) (permanency plan of care); with RCW 13.34.180(1) and RCW 13.34.190(1)(b) (termination). The trial court did not err in denying intervention as a matter of right.

Under CR 24(b)(2), a trial court may grant permissive intervention where the applicant's claim and the main action have a question of law or fact in common. The decision of a trial court to allow or deny permissive intervention in a dependency is within the court's informed discretion and will not be disturbed absent an abuse of

discretion. A trial court abuses its discretion when no reasonable person would take the position taken by the trial court. J.H., 117 Wn.2d at 472.

The mother posits that the trial court abused its discretion because it based its decision on a misunderstanding of the law—that it believed the sibling relationship was irrelevant to the termination case. Because we agree with the trial court's decision limiting testimony of the sibling relationship, we cannot conclude that it abused its discretion in denying the older siblings permissive intervention.

2. Subpoenas for Foster Parents

A trial court abuses its discretion in denying or limiting discovery if its order is based on an erroneous view of the law, is based on untenable grounds, or is manifestly unreasonable. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). The mother argues that the trial court abused its discretion because it based its decision on a misunderstanding of law—again, that it believed the sibling relationship was irrelevant to the termination case. Because we agree with the trial court's decision limiting testimony of the sibling relationship, we cannot conclude that it abused its discretion in quashing the subpoenas for the foster parents.

C. Mother's Provision of Services

The mother argues that the Department failed to prove that it provided her with all necessary services while she was incarcerated. We disagree.

RCW 13.34.180(1)(d) requires the Department to prove by clear, cogent, and convincing evidence that "the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services,

-17-

reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." "Necessary services" are those services "needed to address a condition that precludes reunification of the parent and child." In re Dependency of M.-A.F.-S., 4 Wn. App. 2d. 425, 465, 421 P.3d 482 (2018) (quoting K.M.M., 186 Wn.2d at 480). The record supports that the Department provided services to the mother during the time she was both in and out of incarceration over the course of four years. Social worker Charles Loeffler coordinated with the mother's federal probation officer, seeking to overlap services in the criminal and dependency cases so that services were not duplicative. The mother also received emotional support from the FTC Treatment Specialist who advocated for her. FTC staff worked with the mother in a therapeutic way to engage her in services because they were aware of the challenges she faced, giving her multiple chances to focus on small steps to start moving forward.

The Department referred the mother for a psychological evaluation with a parenting component on at least three different occasions. Social worker Robert Credle referred her to Dr. Harmon sometime in 2016 or the beginning of 2017. Later the Department referred her to the service with Dr. McCollum prior to Jav's birth. Although Dr. McCollum wrote the evaluation, he determined the results were invalid. The Department then re-referred the mother for a psychological evaluation with Dr. Tutty.

The trial court considered the incarcerated parent factors set forth in RCW 13.34.180(1)(f) and .145(5)(b),[8] finding:

---

[8] RCW 13.34.145(5)(b) states:
(b) The court's assessment of whether a parent who is incarcerated maintains a meaningful role in the child's life may include consideration of the following:

As the parents have each been incarcerated at times during the dependencies of these two children and were incarcerated at the time of trial, the Court has given consideration to factors identified in RCW 13.34.180(1)(f) and RCW 13.34.145(5)(b), including barriers to services; reasonable efforts made by the [Department], and whether the parents maintained a meaningful role in the lives of [Jav and Jae].

The trial court found that the testimony of Credle, Loeffler, and the CASA "provided credible evidence supporting the above findings." Credle testified that there were long periods of time during the dependencies for both children when the mother was not incarcerated. During the mother's incarceration, Credle remained in touch with her. During her incarceration, she did not ask to convey writings or communications to Jae and Jav. Nor did she ask to set up phone calls. While the mother was in prison at the SeaTac Federal Detention Facility, visitation with her and the children was arranged.

During the times she was not incarcerated, she had sufficient time to complete the dependency services. According to Credle, the mother "was pretty much resistant to [participating] in all services" offered by the Department. When the mother was in prison in Victorville, California, and at SeaTac, Credle investigated what services were available. Credle was in communication with the mother during her first incarceration as

---

(i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;

(ii) The parent's efforts to communicate and work with the department or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;

(iii) A positive response by the parent to the reasonable efforts of the department;

(iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

(v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

(vi) Whether the continued involvement of the parent in the child's life is in the child's best interest.

well from November 2017 until August 2018 and arranged for visitation with her and the children.

The trial court also found it significant that during times when the parents were not incarcerated, they did not visit Jae or Jav. The court further found that the children were adoptable and had prospects for adoption into a stable and permanent home, and that they were bonded to a home other than that of their biological parents. Sufficient evidence supports the trial court's findings that necessary services were provided and its findings related to the incarcerated parent factors.

### D. Best Interests of the Child Standard

The father argues that the best interests standard under RCW 13.34.190 is unconstitutionally vague as applied to his case. We disagree.

We review the constitutionality of a statute de novo. State v. Eckblad, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). "Statutes are presumed constitutional, and the challenger of a statute must prove beyond a reasonable doubt that the statute is unconstitutional." In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015).

When considering a vagueness challenge, our first step is to determine whether we examine the statute as it applies to the particular case or on its face. City of Spokane v. Douglass, 115 Wn.2d 171, 181-82, 795 P.2d 693 (1990). Vagueness challenges that do not implicate First Amendment rights are evaluated in light of the particular facts of each case. City of Bremerton v. Spears, 134 Wn.2d 141, 159, 949 P.2d 347 (1998). Termination proceedings do not involve First Amendment rights, therefore, we examine the vagueness challenge as applied to this case. In re Welfare of H.S., 94 Wn. App. 511, 524, 973 P.2d 474, 482 (1999).

"A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." In re Contested Election of Schoessler, 140 Wn.2d 368, 388, 998 P.2d 818 (2000). In In re Dependency of A.D., 193 Wn. App. 445, 462-63, 376 P.3d 1140 (2016), this court held that meaningful appellate review is available based on RCW 13.34.190 because the trial court makes detailed, specific findings of fact to support its decisions. We strongly rely on the trial court's determinations of the child's best interests, and we will not second guess evidence and credibility determinations. In re Interest of Pawling, 101 Wn.2d 392, 401, 679 P.2d 916 (1984).

Our case law dictates that the best interests of the child standard must take into account each individual circumstance of the child. In re Dependency of A.V.D., 62 Wn. App. 562, 572, 815 P.2d 277 (1991) ("Washington courts have held that the factors involved in determining the 'best interests' of a child are not capable of specification; rather, each case must be decided on its own facts and circumstances."). Although the father alleges the statute is vague as applied to its case, his argument rests on a broad assertion of the importance of sibling relationships. The court made specific findings indicating why termination was in the best interests of Jae and Jav due to the parents' inability to overcome their parenting challenges. "Where a parent has been unable to rehabilitate over a lengthy dependency period, a court is fully justified in finding termination in the child's best interests rather than leaving the child in the limbo of foster care for an indefinite period while the parent sought to rehabilitate himself." In re

Dependency of T.R., 108 Wn. App. 149, 167, 29 P.3d 1275 (2001).  The father has failed to demonstrate that the best interests standard was vague as applied to him.[9]

Affirmed.

_Mann, C.J._

WE CONCUR:

_____          _____

---

[9] The father asks us to direct the legislature to compile a list of objective factors to guide a court in exercising its discretion under RCW 13.34.190.  Amici support this argument.  This court cannot address this argument.  McCleary v. State, 173 Wn.2d 477, 517, 269 P.3d 227 (2012) (issues of policy and new guidance are not within the role of the court, but rather belong to the legislature).