# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br><br>A.D.,<br>DOB: 12/24/1997,<br>R.D.,<br>DOB: 9/3/2003,<br>A.D.,<br>DOB: 9/14/2008,<br><br>MOHAMMED DABBAGH,<br><br>          Appellant,<br><br>    v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>          Respondent. | No. 73055-0-I<br>(consolidated with Nos. 73056-8-I and<br>73057-6-I)<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |
| In the Matter of the Dependency of<br><br>A.D.,<br>DOB: 12/24/1997,<br>R.D.,<br>DOB: 9/3/2003,<br>A.D.,<br>DOB: 9/14/2008,<br><br>IBTISSAM NAKALJI,<br><br>          Appellant,<br><br>    v.<br><br>STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES,<br><br>          Respondent. | (consolidated with Nos. 73157-2-I,<br>73158-1-I, and 73159-9-I)<br><br><br><br>FILED: April 18, 2016 |

TRICKEY, A.C.J. — Ibtissam Nakalji and Mohammed Dabbagh appeal the termination of their parental rights. Nakalji argues that the trial court denied her due process by excluding her from the courtroom while her son testified. We hold that the trial court adequately protected Nakalji's due process rights by allowing her attorney and guardian ad litem to remain in the courtroom during the testimony and granting a recess to confer with her before cross-examination. We affirm the trial court's decision to terminate her parental rights because substantial evidence supported its findings.

Dabbagh challenges the termination of his parental rights on the basis that the best interest of the child standard is constitutionally vague. Because Dabbagh does not show how the standard was vague as applied to him, we affirm the termination of his parental rights as well.

## FACTS

Mohammed[1] Dabbagh and Ibtissam Nakalji are the biological parents of four children: S.D. born June 22, 1996;[2] A.D., born December 24, 1997; R.D., born September 3, 2003; and A.D.2,[3] born September 14, 2008.

In June 2012, S.D. disclosed that Dabbagh had been sexually abusing her for the past five years. Law enforcement officers placed S.D. in protective custody and arrested Dabbagh. The State removed the remaining three children from Nakalji's custody several days later because she was unable to parent them without Dabbagh. The court found Nakalji to be incompetent and appointed her a guardian ad litem.

---

[1] There are several different spellings in the record of appellant Mohammed Dabbagh's first name. We adopt the spelling "Mohammed" because it was used in the appellate case caption, the brief filed by Dabbagh, and the respondent's brief filed by the State.

[2] Because S.D. was over 18 during the termination trial, she is not a party to this case.

[3] The two boys share the initials "A.D." We refer to the younger son as A.D.2.

For the next year, A.D., R.D., and A.D.2 lived with their paternal uncle. In June 2013, the children moved to a foster home, where they remained through January 2015. Their foster parents expressed interest in adopting them.

During the dependency, Dabbagh attended parenting classes and counseling for domestic violence. Because he continued to deny that he had sexually abused S.D., he was found unamenable to treatment for sexual deviancy. Nakalji also continued to deny that Dabbagh abused S.D.

Nakalji had suffered from depression since at least 2007. As her depression worsened, she became less engaged in the court proceedings and even stopped participating in the children's visits at her home. Her depression ultimately resulted in her hospitalization in April 2014. While hospitalized, Nakalji began taking medication for depression and psychosis. Her depression and engagement improved over the next few months, but she remained extremely dependent on Dabbagh for her own needs and for guidance on parenting.

In December 2014, the State petitioned to have Dabbagh's and Nakalji's parental rights terminated. The termination fact-finding took place in January 2015. The children's current and former social workers, Nakalji's mental health providers, A.D., two visitation supervisors, and the children's guardian ad litem all testified for the State. The State also played S.D.'s videotaped deposition. Dabbagh testified, at the State's request. The court excluded Dabbagh and Nakalji from the courtroom during A.D.'s testimony.

The court terminated both parents' rights. Dabbagh and Nakalji appeal.

ANALYSIS

Exclusion of Nakalji during A.D.'s Testimony

Nakalji contends that the trial court erred and violated her right to due process when it excluded her from the courtroom during A.D.'s testimony. We reject this argument and hold that the court adequately protected Nakalji's rights.

Parents are guaranteed due process when the State seeks to terminate their parental rights. In re Welfare of L.R., 180 Wn. App. 717, 723, 324 P.3d 737 (2014); U.S. CONST. amend XIV; WASH. CONST. art. I, § 3. The State must give parents "notice, an opportunity to be heard and defend, and the right to be represented by counsel." L.R., 180 Wn. App. at 723. Although the right to be heard "'ordinarily includes the right to be present,'" that right is not absolute. In re Welfare of S.E., 63 Wn. App. 244, 248-49, 820 P.2d 47 (1991) (emphasis omitted) (quoting In re Houts, 7 Wn. App. 476, 480-81, 499 P.2d 1276 (1972)). The court may exclude a parent from part of her termination of parental rights hearing, so long as the procedures satisfy due process. S.E., 63 Wn. App. at 251.

To determine if a specific procedure adequately protects a parent's right to due process, the court engages in a three-factor balancing test. Krause v. Catholic Cmty. Servs., 47 Wn. App. 734, 738, 737 P.2d 280 (1987) (test derived from Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). The three factors are the private interest at stake, the government interest at stake, and the risk of error created by the procedure. In re Dependency of T.R., 108 Wn. App. 149, 154-55, 29 P.3d 1275 (2001).

4

We review alleged due process violations de novo. In re Det. of June Johnson, 179 Wn. App. 579, 584, 322 P.3d 22, review denied sub nom. In re Det. of Johnson, 181 Wn.2d 1005, 332 P.3d 984 (2014).

Here, the court excluded Nakalji and Dabbagh from the courtroom while A.D. testified. A.D. testified about witnessing Dabbagh sexually assault S.D. He also described how Nakalji's mental illness impacted him and his older sister.

He testified that Nakalji had been depressed for as long as he could remember and would often sit on the couch and talk to herself, forcing S.D. to take care of A.D.2. He explained that, as recently as October 2014, Nakalji still relied on Dabbagh to tell her what to do during visits and that Nakalji would not be able to stand up to Dabbagh because she was too loyal and dependent on him. Finally, A.D. testified that he had seen positive changes in himself since the dependency began, and he wanted the court to terminate his parents' rights.

The court permitted Nakalji's attorney and guardian ad litem to remain in the courtroom during the testimony. The court also promised to "adequately grant requests" for breaks so that the attorneys would have an opportunity to confer with the parents and prepare for cross-examination.

Both Nakalji and the State have strong interests at stake in these proceedings. Nakalji "has a fundamental liberty interest in the care and custody of her children." L.R., 180 Wn. App. at 724. The State, likewise, has a strong interest in protecting the rights of A.D. and the other children. L.R., 180 Wn. App. at 727. The State has no interest in separating children from their fit parents. T.R., 108 Wn. App. at 159. Excluding Nakalji and Dabbagh from the courtroom served the State's interest in protecting A.D.'s welfare

because the court found that excluding them was important to protect A.D. and A.D.'s relationship with his parents. But that exclusion would not promote the State or Nakalji's interests if it created a risk that the State would erroneously terminate Nakalji's parental rights.

Therefore, the primary question is whether allowing A.D. to testify without his parents in the courtroom created much risk of error. It did not. Although Nakalji herself was excluded, both her guardian ad litem and attorney represented her during A.D.'s testimony. At Nakalji's request, the court recessed for 18 minutes between A.D.'s direct and cross-examination in order for the attorneys to confer with the parents. Nakalji did not seek any other breaks.

The court found that it was important to have "as much information as possible" and agreed that A.D. would be more forthcoming without his parents there.[4] A.D. did, in fact, testify about aspects of his current life and his relationship with his parents that he might not have said in front of them.

Nakalji's argument that there was a high risk of error because she could not help her attorney prepare for cross-examination since her attorney would not be able to recount A.D.'s full testimony to her is not compelling. In a very similar case, a court held that having child witnesses testify without their parents present did not violate due process because, like here, the parents' counsel was present, the questions were asked on the record, there was other evidence to corroborate the children's evidence, and the parents' counsel had an opportunity to cross-examine the children and present rebuttal evidence.[5]

---

[4] Report of Proceedings (RP) at 23.
[5] S.D. testified about her father's abuse, her mother's depression and neglect, and having to parent her youngest brother. Visitation supervisors and social workers confirmed A.D.'s observations of his mother during his visits and even the changes he observed in himself.

6

S.E., 63 Wn. App. at 249-50.

Nakalji attempts to distinguish this case from S.E. In that case, both parents had been involved in the sexual abuse of the children. S.E., 63 Wn. App. at 246. The court excluded the parents because of the children's ages, both were under 10, and the nature of their testimony. S.E., 63 Wn. App. at 250-51. The children testified about the abuse and where they wanted to live. S.E., 63 Wn. App. at 251.

Nakalji argues that there was no reason to exclude her while A.D. testified because she did not participate in any abuse. Although Nakalji was not abusive, she was extremely neglectful, about which A.D. testified. Moreover, like the children in S.E., A.D. testified about not wanting to live with his parents. Nakalji also argues that 17-year-old A.D. needed less protection than the very young children in S.E. This is not persuasive. Although A.D. was a teenager, he was still a minor.

The balance of these three factors establishes that excluding Nakalji from the courtroom while A.D. was testifying did not violate her right to due process. We hold that excluding Nakalji from the courtroom was not error.

## Sufficiency of the Evidence

Nakalji's remaining challenges are to the court's determinations that there was little likelihood that she would be able to parent her children in the near future, continuing her parent-child relationships diminished her children's chances of integration into a stable and permanent home, and terminating her parental rights was in the children's best interests. To support these claims, she challenges the sufficiency of evidence behind many of the trial court's findings. We reject these claims because substantial evidence shows that each of these findings was highly probable.

To terminate a parent's rights, the State must prove the requirements of RCW 13.34.180(1) by clear, cogent, and convincing evidence.[6] RCW 13.34.190(1)(a)(i). The State must also show by a preponderance of the evidence that the termination of the parent's rights is in the children's best interests. RCW 13.34.190(1)(a)(iv),(b); In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). In light of the high burden of proof for RCW 13.34.180(1), we review a trial court's determination of those factual findings to see if there is "'substantial evidence' to support such findings in light of the 'highly probable' test." In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). But we do not weigh the evidence or make credibility determinations. Sego, 82 Wn.2d at 739-40.

---

[6] The requirements of RCW 13.34.180(1) are

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided. . . .;

. . . ; and

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

Each of Nakalji's claims fails under this standard.

*Likelihood that Conditions Will Be Remedied in Near Future*

Nakalji contends that the court erred by determining that there was little likelihood that she would be fit to resume her parental duties in the near future. She maintains that, in light of her improvement in the months leading up to termination, the court relied too much on her past performance. Because there was substantial evidence that Nakalji would need another two years of treatment before she was ready to parent, we reject this argument.

To terminate a parent's rights, the court must find as one of the six factors in RCW 13.34.180(1) that "there is little likelihood that conditions will be remedied so that the children can be returned to the parent in the near future." RCW 13.34.180(1)(e). Here, the court determined, in an unchallenged finding, that the foreseeable future for the children was 12 months for the youngest child and 12 to 24 months for the older two children. The court found that Nakalji would not be ready to parent within that time.

Nakalji's primary argument is that, because she had made remarkable progress in the months leading up to the trial, the court could not rely solely on her past behavior. She relies on In re Welfare of C.B. for support. 134 Wn. App. 942, 953, 143 P.3d 846 (2006). There, the court held that, once a parent shows that "she has been improving" the court may not rely "solely on past performance to prove that it is highly probable that there is little likelihood that the parent will be reunited with her children in the near future." C.B., 134 Wn. App. at 953. In that case, there was no evidence about the mother's prognosis. C.B., 134 Wn. App. at 956.

The testimony here more closely resembles that available to the trial court in In re Welfare of T.B., 150 Wn. App. 599, 604, 209 P.3d 497 (2009). There, the mother had participated in less than six weeks of a drug and alcohol program by the time of her termination trial. T.B., 150 Wn. App. at 604. Her counselor testified that she would need another year of sessions. T.B., 150 Wn. App. at 604. The court held that there was substantial evidence to support the trial court's finding that the mother would not be ready to parent in the near future. T.B., 150 Wn. App. at 611.

Similarly, here, several mental health professionals testified specifically about how long Nakalji's recovery would take. Dr. Tatyana Shepel, who evaluated Nakalji in September 2014, diagnosed her with major depressive disorder, moderate recurrent. She opined that Nakalji would need more than two years of treatment once she was amenable to treatment, but that Nakalji was not currently amenable to treatment. Dr. Shepel also testified that Nakalji had no insight into her mental health issues and could not function independently from her husband. Nakalji's psychiatrist testified that she would probably need treatment for two to three years, depending on her progress.

Nakalji argues that she would be ready to parent sooner based on her current therapist's opinion that she "could make significant progress in therapy over a 12- to 24-month period of time."[7] In fact, her therapist's testimony was that one to two years of therapy would be a "reasonable start."[8] Shepel's testimony supports the trial court's findings. We do not reweigh evidence.

---

[7] Br. of Appellant Nakalji at 20.
[8] RP at 245.

10

Nakalji assigned error to the sufficiency of the evidence for all the findings related to her under the heading, "Likelihood of Remedial Action."[9] Some of these findings relate to her mental health prognosis and are amply supported by the record, as discussed above. Others demonstrate the court's concern that Nakalji continued to deny that Dabbagh had sexually abused S.D., and that Nakalji would not be willing or able to intervene in the case of future abuse. Nakalji's argument ignores that concern and the related findings. Accordingly, Nakalji has abandoned these assignments of error. Valley View Indus. Park v. City of Redmond, 107 Wn.2d 621, 630, 733 P.2d 182 (1987).

In sum, we hold that the trial court did nor err by concluding that there was little likelihood that the State could return Nakalji's children to her in the near future.

*Integration into a Stable and Permanent Home*

Next, Nakalji claims that the trial court erred by finding that continuing her parent-child relationships diminished her children's chances of early integration into a stable and permanent home. She argues that, because her children were already in a stable placement, maintaining her legal relationship to them had no impact. We disagree because maintaining her parental rights prevents the children from having a permanent home.

To terminate a parent's rights, the court must find, as another factor of RCW 13.34.180(1), "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f). "[T]his factor is mainly concerned with the continued effect of the *legal* relationship between parent and child, as an obstacle to adoption." In re Dependency of

---

[9] CP at 29 (findings of fact 2.18, 2.19, 2.21-2.26).

11

A.C., 123 Wn. App. 244, 250, 98 P.3d 89 (2004). The State can prove this factor by showing that "a permanent home exist[s] but the parent-child relationship prevents the child from obtaining that placement." In re Welfare of R.H., 176 Wn. App. 419, 428, 309 P.3d 620 (2013).

Here, Nakalji challenged finding of fact 2.27, the trial court's finding on this question. But she did not challenge the trial court's finding of fact 2.28, "The children are currently in a foster home that has expressed a desire and willingness to adopt the children."[10] Thus, the State has shown that, but for the legal relationship between Nakalji and her children, there is a high probability that the children could find a permanent adoptive home. We hold that this satisfies RCW 13.34.180(1)(f).

Nakalji argues that there is no evidence that terminating her parental rights would have any impact on the children's placement. She claims that "a stable and permanent home *was already available* for the children."[11] Nakalji's argument addresses only the stability of their placement, not its permanence. Although their foster home may have been *stable*, it is, by definition, temporary. See RCW 13.40.020(12).

Nakalji distinguishes her parent-child relationships from the one at stake in In re Dependency of K.D.S., in which the Washington State Supreme Court affirmed the termination because continuing the relationship diminished the likelihood that the child would "be emotionally and psychologically prepared to integrate into a stable and permanent home should one become available." 176 Wn.2d 644, 659, 294 P.3d 695 (2013). Nakalji is correct that her relationships with her children are not destructive. But that is irrelevant. K.D.S. provides one way that the State can prove RCW 13.34.180(1)(f),

---

[10] Clerk's Papers (CP) at 29.
[11] Br. of Appellant (Nakalji) at 22.

12

not the only way. R.H., 176 Wn. App. at 428. Nakalji's legal relationship with her children prevents them from being adopted into a permanent home.

*Best Interests of the Children*

Nakalji's final claim is that terminating her parental rights was not in the children's best interests because of the strong bonds between her and her children. We reject her argument. Although no one disputes that Nakalji and her children love each other, other factors support the court's finding that termination is in the children's best interests.

Nakalji challenges the sufficiency of the evidence supporting the trial court's findings that terminating her parental rights is in the children's best interests:

> 2.32 Best Interest of the Child
> It is in the best interest of the children that all of the parental rights of Ibtissam Nakalji and Mohamad B. Dabbagh be terminated under RCW 13.34.180 and .190.
>
> . . . .
>
> 2.34 The children do love their parents and the parents love them but love is not enough. Because it is not safe or appropriate at this time to return the children to the care of the parents, termination of the parents' rights is in the children's best interests.[12]

Whether termination of a parent's rights is in a child's best interest is a highly fact dependent question. In re Aschauer's Welfare, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). Here, both social workers involved in the case and the children's guardian ad litem testified that it would be in the children's best interests to terminate their parents' rights.

Their former social worker noted the changes she had observed in the children since they left their parents' custody. At the beginning of the dependency, A.D. was very shy and had to behave more like a parent than a sibling. Recently, A.D. had become

---

[12] CP at 30.

13

"lighter, smiling more, talking more, loving more."[13] He had improved academically and become more social. R.D., who had struggled academically and needed speech therapy, had improved her reading and transitioned out of speech therapy.

The biggest changes the social worker observed were in A.D.2. At the beginning of the case, he was still wearing diapers, although he was already four years old. He had significant problems with his speech in both Arabic and English and was not socially engaged. By the time of the termination hearing, he was attending preschool, could name his friends, was much more expressive, was potty-trained, had learned to ride a bicycle, and was learning developmentally appropriate concepts.

The positive improvements in all the children, along with Nakalji's continuing mental health problems and denial regarding Dabbagh's abuse of S.D., strongly support the trial court's findings that terminating Nakalji's parental rights was in the children's best interests. We affirm the termination of Nakalji's parental rights.

*Remaining Findings of Fact*

Nakalji also assigned error to findings of fact 2.7, 2.11, and 2.12. Collectively, these establish that the State "made extraordinary efforts" to provide the necessary services to Nakalji. She makes no arguments about these assigned errors, thus, she has abandoned them. Valley View, 107 Wn.2d at 630.

<u>Vagueness</u>

Dabbagh's only challenge is that the best interest of the child standard is unconstitutionally vague. He argues it lacks the necessary guidance for equitable application and does not provide for adequate appellate review. We reject his argument

---

[13] RP at 366.

because facial challenges are unavailable against statutes that do not implicate First Amendment rights.

Statutes are presumed constitutional. State v. Coria, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). The party challenging a statute bears the burden of proving the statute is unconstitutional beyond a reasonable doubt. Coria, 120 Wn.2d at 163.

Dabbagh challenges RCW 13.34.190, which establishes the conditions under which a court may terminate a parent's rights. Specifically, he claims that the requirement that the trial court find that termination would be "in the best interests of the child" is unconstitutionally vague. RCW 13.34.190(1)(b).

The State argues that Dabbagh cannot challenge this statute as vague on its face because it does not implicate First Amendment rights. The State is correct that courts will generally not entertain facial vagueness challenges to statutes that do not affect First Amendment rights. State v. Halstien, 122 Wn.2d 109, 117, 857 P.2d 270 (1993); Coria, 120 Wn.2d at 163; City of Spokane v. Douglass, 115 Wn.2d 171, 182, 795 P.2d 693 (1990). This has been the court's approach in the termination of parental rights cases for decades. See In re Welfare of H.S., 94 Wn. App. 511, 524, 973 P.2d 474 (1999), as corrected (Apr. 15, 1999); In re Dependency of C.B., 79 Wn. App. 686, 689, 904 P.2d 1171 (1995).

Noting that some have characterized terminating a parent's rights as a "civil death penalty,"[14] Dabbagh cites to two death penalty cases to support his facial challenge. Furman v. Georgia, 408 U.S. 238, 239-240, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972);

---

[14] Br. of Appellant (Dabbagh) at 3 (citing In re FM, 163 P.3d 844, 851 (Wyo. 2007); Tammila G. v. Nevada, 148 Nev. 759, 763, 148 P.3d 759 (2006); In re K.A.W., 133 S.W.3d 1 (Mo. 2004); In re Hayes, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997)).

Gregg v. Georgia, 428 U.S. 153, 188-89, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Those cases are not applicable because they considered whether the imposition of the death penalty violated the Eighth Amendment's prohibition on cruel and unusual punishment, not whether it was void for vagueness. Furman, 408 U.S. at 239-40; Gregg v. Georgia, 428 U.S. at 158.

Even if a facial vagueness challenge were available to Dabbagh, the challenge would fail. "'A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" In re Contested Election of Schoessler, 140 Wn.2d 368, 388, 998 P.2d 818 (2000) (internal quotation marks omitted) (quoting Haley v. Med. Disciplinary Bd., 117 Wn.2d 720, 739-40, 818 P.2d 1062 (1991)). The best interest of the child standard is more objective when viewed in light of the rigorous standards for termination. See RCW 13.34.180(1). Further, "[t]he complexity of the cases and the need for careful individual treatment militates against the mandatory consideration of certain specified factors in every case." Matter of Becker's Welfare, 87 Wn.2d 470, 477, 553 P.2d 1339 (1976).

Meaningful appellate review is available because the trial court makes detailed findings of fact to support its decisions. The court rules also require the trial court to specify the factual basis for its decisions. CR 52(a)(1). "[W]here findings are required, they must be sufficiently specific to permit meaningful review." In re LaBelle, 107 Wn.2d 196, 218, 728 P.2d 138 (1986). When the findings are not "sufficiently specific," appellate courts will remand to the trial court. State v. Barber, 118 Wn.2d 335, 345, 823 P.2d 1068 (1992).

Dabbagh makes no attempt to show that the best interest of the child statute was vague as applied to him. Nothing in the record suggests the decision was arbitrary as applied to Dabbagh.

We affirm the termination of Dabbagh and Nakalji's parental rights to A.D., R.D., and A.D.2.

Trickey, ACJ

WE CONCUR: