# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re: | DIVISION ONE |
| CHRISTY McKINLEY, | No.84636-1-I |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| LARS SOMMER, | |
| Respondent. | |

DWYER, J. — Christy McKinley challenges the final parenting plan and order of child support concerning her son, J.S. McKinley asserts that the trial court erred in numerous respects, including by failing to enter necessary written findings of fact and conclusions of law, denying the admission of certain photographs into evidence, admitting the testimony of two witnesses, not entering restrictions against the child's father, and ordering equal residential time for both parents. We agree that the trial court erred by not entering necessary written findings of fact and conclusions of law and remand for the trial court to enter such findings and conclusions consistent with and based on the existing record. In the absence of such findings and conclusions, we are precluded from reviewing some of McKinley's claims of error regarding the terms of the parenting plan. We otherwise affirm as to all remaining issues.

I

Sommer and McKinley were in a dating relationship and living together in University Place, Washington when McKinley gave birth to J.S. on September 15, 2018. Sommer and McKinley separated in September 2019, but continued to reside in the same house until January 2020. McKinley has two older children from previous relationships, P.J.M. and B.R.

On January 21, 2020, McKinley filed a petition for a parenting plan and child support order. At the time of trial, McKinley requested that the trial court adopt the residential schedule from the temporary orders, which had J.S. residing with Sommer every other weekend plus a weekly Wednesday overnight and alternating holidays. McKinley also asked the trial court to enter RCW 26.09.191 restrictions against Sommer based on claims of a long-term emotional impairment and a long-term impairment resulting from substance abuse.

A bench trial was conducted over five days between December 6 and December 14, 2021. The trial court heard testimony from McKinley, Sommer, J.S.'s former nannies Savannah Caillier and Olivia Dieffenbach, P.J.M.'s father Ben Porter, and attorney Ken Kagan.

McKinley's request for .191 restrictions was based primarily on Sommer's prior drug use. Sommer admitted that he had, at various times, used illicit substances including cocaine, LSD[1] otherwise known as "acid," MDMA[2] otherwise known as "Molly," MDA[3], and psilocybin otherwise known as

---

[1] Lysergic acid diethylamide.
[2] Methylenedioxymethamphetamine.
[3] Methylenedioxyamphetamine.

2

"mushrooms." However, Sommer testified that he had not used any illicit substances since August 2019. He also testified that the last time he had used marijuana or THC was December 2019. Furthermore, Sommer had taken a drug test as ordered by the court, which came back negative for all substances. McKinley, on the other hand, argued that Sommer was downplaying the seriousness of his drug use and presented testimony and multiple exhibits to that effect. McKinley also argued that Sommer displayed "aggression," "abusiveness," "hostility," and "intimidation," and that these provided an independent basis upon which the court could impose restrictions.

The trial court announced its final decision in the matter at a January 28, 2022 hearing. The trial court noted that "[c]redibility in this case was very informative," though it did not specify who it found to be credible as to which issues. The trial court did not view the dispute between McKinley and Sommer as a "high conflict case." The trial court rejected McKinley's request for .191 restrictions, stating:

> At times there has clearly been evidence about some lapse in judgment on both sides. There [have] been some allegations, I guess, of maybe, well, at most neglect. There is absolutely no evidence that either one of you have ever done anything intentionally that would harm your son.
>
> Neither party has established any RCW 26.09.191 limitations including the long-term drug history or any domestic violence issues. I am not ordering a drug evaluation or any further testing.
>
> Mr. Sommer, I think you've learned a lesson from this trial that the courts frown on drug use and definitely not, you know, you are not to use any substance, whether that's alcohol or anything else when your child is with you.

> I am not putting a limitation in the parenting plan saying either one of you are prohibited from alcohol or drugs because I believe that the evidence has shown me you are both responsible adults and will not do anything that would jeopardize the health and safety of your son.

The trial court opted for a 50/50 split of residential time because it saw "no reason to limit parenting time to either parent."

The trial court entered a final parenting plan and an order of child support on January 27, 2022. The trial court did not separately enter written findings of fact and conclusions of law. The sole finding of fact contained in the parenting plan states that "[t]he Court adopts the statements in section 3 (Reasons for putting limitations on a parent) as its findings." The parenting plan makes no mention of any oral statements made by the trial court.

Although designated as a final order, the order for child support stated that "[t]his support order will be reviewed on May 23, 2022," and that the parties should present updated financial information, including their 2021 tax filings. In that order, the trial court directed McKinley to provide to Sommer "a client summary of all billed and administrative hours (client names redacted) as well as the days and specific hours the childcare provider provides care for the child between the parties" after J.S. entered preschool. The court declined to award attorney fees or costs to either party.

McKinley filed a notice of appeal on February 28, 2022.

On September 2, 2022, the trial court entered a new temporary child support order. Therein, the court set another review hearing for May 4, 2023. This order did not contain a provision requiring McKinley to provide a client

4

summary to Sommer.

II

McKinley asserts that the trial court erred by failing to enter findings of fact and conclusions of law reflecting its consideration of the factors enumerated in RCW 26.09.187(3)(a) in conjunction with the parenting plan.[4]  We agree.

The trial court is required to enter findings of fact and conclusions of law in connection with all final decisions in custody matters.  CR 52(a)(2)(B).  The purpose of findings of fact and conclusions of law is to ensure that the trial court "'has dealt fully and properly with all the issues in the case before [the court] decides it and so that the parties involved and this court on appeal may be fully informed as to the bases of [the court's] decision when it is made.'"  In re Det. of LaBelle, 107 Wn.2d 196, 218-19, 728 P.2d 138 (1986) (internal quotation marks omitted) (quoting State v. Agee, 89 Wn.2d 416, 421, 573 P.2d 355 (1977)).  If a trial court has not entered findings of fact that are "'sufficiently specific'" to allow for meaningful review, this court may remand the cause to the trial court to enter the necessary findings based on the record of the prior proceedings.  In re Dependency of A.D., 193 Wn. App. 445, 462-63, 376 P.3d 1140 (2016) (quoting LaBelle, 107 Wn.2d at 218).  This is the remedy we impose herein.

RCW 26.09.187(3)(a) dictates that the trial court make residential provisions for all children named in a parenting plan after considering seven specifically enumerated factors.  Those factors are as follows:

---

[4] Following oral argument, Sommer filed both a motion to permit the trial court to enter findings of fact and conclusions of law and a motion to supplement the appellate record.  Given the disposition of this matter today, we deny Sommer's motions as moot.

(i) The relative strength, nature, and stability of the child's relationship with each parent;

(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;

(iii) Each parent's past and potential for future performance of parenting functions as defined in RCW 26.09.004(3), including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;

(iv) The emotional needs and developmental level of the child;

(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;

(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and

(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.

RCW 26.09.187(3)(a). Ordinarily, the trial court is required to enter findings of fact and conclusions of law reflecting its consideration of the seven enumerated factors. "When written findings of fact do not clearly reflect a consideration of the statutory factors, resort can be made to the court's oral opinion." In re Marriage of Murray, 28 Wn. App. 187, 189, 622 P.2d 1288 (1981) (citing In re Marriage of Dalthorp, 23 Wn. App. 904, 911-12, 598 P.2d 788 (1979)). However, the trial court's oral opinion must still reflect its application of the statutory factors and consideration of the best interests of the child, Murray, 28 Wn. App. at 189-90, and must be sufficiently specific so as to permit appellate review.

It is undisputed that the trial court did not enter written findings of fact and conclusions of law in this matter. The only finding of fact that appears in the parenting plan states: "The Court adopts the statements in section 3 (Reasons for putting limitations on a parent) as its findings." Section 3 simply states that neither parent has a problem with abandonment, neglect, child abuse, domestic

6

violence, assault, sex offense, or any other problem that may harm the child's best interests that would warrant a restriction pursuant to RCW 26.09.191.

The trial court's oral ruling in this matter is not sufficiently specific for us to say with any certainty that the court considered all seven factors set forth in RCW 26.09.187. For example, it is not clear that the trial court fully considered factor one—the strength, nature, and stability of the child's relationships with each parent—which by statute is considered the most important factor. RCW 26.09.187(3)(a). The trial court indicated that it was imposing a 50/50 split schedule because there was no basis for .191 limitations. Thus, the court "[saw] no reason to limit parenting time to either parent." While this statement reflected the trial court's finding that neither parent had a *bad* relationship with J.S., it is not otherwise reflective of the strength, nature, and stability of J.S.'s relationships with Sommer and McKinley.

Furthermore, the trial court did not explicitly resolve many of the contested issues in the case. While the trial court stated that "[c]redibility in this case was very informative," it then went on to say "[b]oth of you tried to portray yourself as the reasonable party, the most reasonable party in the room. And sometimes you were and sometimes you weren't." This indicates that the trial court found one of the parties credible as to certain issues, but the other party credible as to other issues. Unfortunately, the trial court did not specify which parent it found credible as to which issue. Nor did the trial court specify why a 50/50 residential split was more consistent with the best interests of the child than the residential schedule proposed by McKinley. Given these material omissions, the trial court's

7

oral statements cannot substitute for written findings of fact and conclusions of law.

The lack of findings of fact and conclusions of law precludes us from reviewing McKinley's claim of error with regard to the residential split in the parenting plan, as well as her claim of error regarding guidelines for communication between the parties.

The remedy for the trial court's omission is remand for the purpose of entering findings of fact and conclusions of law. A.D., 193 Wn. App. at 462-63. No new trial is warranted unless the judge who presided over the trial has left the bench, which is not the case here. CR 63(b). We accordingly remand this matter for the trial court to enter the necessary findings of fact and conclusions of law or to conclude that the evidence presented did not, in fact, allow for the entry of necessary findings.[5]

III

McKinley asserts that the trial court erred by excluding from evidence photographs taken by a Ring surveillance camera in McKinley's home depicting Sommer grabbing her by her sweatshirt. This is so, she asserts, because an employee of Ring was not required to authenticate the photographs. Although we agree that the trial court erred, that error was harmless.

We review evidentiary rulings for an abuse of discretion. Bengtsson v. Sunnyworld Int'l, Inc., 14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020).

---

[5] On remand, the trial court is free to amend any decision made if it becomes of the belief that the evidence did not support the decision at issue.

"Evidentiary error is grounds for reversal only if it results in prejudice." City of Seattle v. Pearson, 192 Wn. App. 802, 817, 369 P.3d 194 (2016). "An error is prejudicial if 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Pearson, 192 Wn. App. at 817 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

ER 901(a)[6] provides that evidence must be authenticated through "evidence sufficient to support a finding that the matter in question is what its proponent claims." To properly authenticate a photograph, a witness must be "able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated." State v. Newman, 4 Wn. App. 588, 593, 484 P.2d 473 (1971). However, that witness need not be the photographer, nor must the witness have been present when the photograph was taken. State v. Sapp, 182 Wn. App. 910, 914-15, 332 P.3d 1058 (2014).

> Here, the trial court ruled that, although the photographs were relevant,
>
> I don't know how we are going to get this admitted without somebody from Ring explaining. And I have gone through this several times in different settings, and the chain of custody issue is concerning. So I am sustaining the objection.

The record indicates that McKinley was a person with knowledge about when, where, and under what circumstances the photographs were taken. Her testimony alone was sufficient to authenticate the photographs. Accordingly, the trial court erred by excluding the photographs as not properly authenticated.

---

[6] McKinley's assertion that the rules of evidence should not have applied is made for the first time on appeal. We accordingly deem this argument waived. RAP 2.5(a).

However, this error was not prejudicial. "[I]mproper admission of evidence constitutes harmless error if the evidence is cumulative or of only minor significance in reference to the evidence as a whole." Hoskins v. Reich, 142 Wn. App. 557, 570, 174 P.3d 1250 (2008). McKinley had earlier testified that in the summer or fall of 2019, Sommer, during an argument,

> forgot that there was another door in the room after he blocked one. So I went out that one and he chased after me and grabbed me by the back of my sweatshirt and yanked. And I am like, "Don't do that. You can't do that to me." So he got in front of me again and started blocking the doors.

The photographs that McKinley sought to admit depicted the events she had earlier testified to. Furthermore, McKinley had not sought to have Sommer's residential time limited due to a history of domestic violence.[7] McKinley has not demonstrated that inclusion of the photographs would likely have materially affected the outcome of the trial. Accordingly, any error in excluding the photographs was harmless.[8]

IV

During his direct examination, counsel for Sommer asked Porter, "What is your understanding of [P.J.M.]'s beliefs about bullying?" McKinley objected to the question on the basis of hearsay. The trial court overruled the objection. After Sommer's counsel repeated the question, Porter testified that P.J.M.

---

[7] McKinley testified that she was seeking a restraining order that "will just keep him from coming to my house" on the basis of behavior Sommer had exhibited during exchanges of the child. However, her petition for a parenting plan disclaimed any intent to seek a restraining order or order of protection.

[8] McKinley further asserts that the trial court erred by sustaining improper objections by Sommer's counsel. Because McKinley does not identify the objections in her brief, we will not further consider this claim of error. RAP 10.3(a)(6).

"blurted out, out of the blue, 'Lars is a non-bully.'" McKinley asserts that it was error for the trial court to overrule the objection and permit Porter to testify about his son's statements. We disagree.

As an initial matter, Sommer asserts that there was no error because the trial court sustained McKinley's hearsay objection. This is inaccurate. The objection sustained by the trial court was regarding statements McKinley had made to P.J.M., rather than statements made by P.J.M. himself. This is evident from the trial transcript:

> [PORTER]: He said, "Lars is a non-bully." And it was like the wheels had just been turning in his head as he is thinking about this. And he mentioned that his mom had said Lars was a bully and --
> [McKINLEY]: Objection. Hearsay.
> THE COURT: Sustained.

However, even when the testimony is properly characterized, it was not error for the trial court to permit Porter to answer the question posed to him. A statement is not hearsay if it is not being offered for the truth of the matter asserted. ER 801(c). The testimony offered by Porter was not admissible for the truth of what P.J.M. said, but would have been admissible for the effect it had on Porter. In a bench trial, "a trial judge is presumed to know the rules of evidence and is presumed to have considered only the evidence properly before the court, and for proper purposes." In re Welfare of Harbert, 85 Wn.2d 719, 729, 538 P.2d 1212 (1975). The trial court did not abuse its discretion in permitting Porter to testify about P.J.M.'s beliefs about bullying.

V

McKinley asserts that the trial court erred by permitting Kagan to testify

that he believed McKinley had assisted in drafting a complaint against his client, a guardian ad litem. This is so, she asserts, because the testimony was irrelevant.[9] We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "The threshold to admit relevant evidence is low; even minimally relevant evidence is admissible." Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc., 178 Wn. App. 702, 729, 315 P.3d 1143 (2013).

Kagan's testimony satisfied the low threshold for relevance. Although Sommer did not seek .191 restrictions against McKinley, he did present a theory that McKinley was a high conflict parent. To that end, Sommer introduced the testimony of Kagan, an attorney who represented guardian ad litem Jennifer Wheeler in responding to a complaint filed against Wheeler. Kagan testified that he believed that McKinley had filed the complaint against Wheeler, based on "the level of detail" in the complaint and "recitation of things that occurred" in private settings. Kagan then testified that McKinley was not the author of the complaint. Kagan was asked whether "[i]n your professional and legal opinion could this complaint have been written without Ms. McKinley's direct involvement?" McKinley objected on multiple bases, including that Kagan had not been designated or presented as an expert, undue prejudice, and relevance. The trial

---

[9] McKinley also refers to Kagan's testimony as "speculative" and "unduly prejudicial." However, she provides no support for these assertions. We therefore decline to address them. See State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); RAP 10.3(a)(6).

court overruled the objection, and Kagan testified that he believed McKinley was directly involved.

The thrust of Kagan's testimony was that McKinley had likely assisted in preparing a complaint against the guardian ad litem appointed in the parentage action concerning P.J.M. This evidence tended to support Sommer's theory that McKinley was a high conflict parent. Whether either parent was high conflict was a material fact in this case, as the level of conflict would affect the provisions that the court decided to enter into the parenting plan. See RCW 26.09.184(1) (objectives of parenting plan include setting responsibilities of parents and encouraging parents to meet those responsibilities without resort to judicial intervention). Kagan's testimony was therefore relevant and the trial court did not abuse its discretion in admitting that evidence.

Moreover, even if permitting Kagan to testify was in error, any such error was harmless. The trial court ultimately determined that "this is not a high conflict case." The trial court also stated in its oral ruling that it did not envision the matter becoming "a high conflict case after my ruling." This indicates that the trial court did not assign much weight, if any, to Kagan's testimony. As Kagan's testimony was of no significance to the terms of the final parenting plan, McKinley suffered no prejudice by its admission.

VI

McKinley asserts that the trial court erred by declining to enter .191 restrictions against Sommer, as he admitted to having used multiple illicit substances. We disagree.

13

We review a trial court's parenting plan for an abuse of discretion. DeVogel v. Padilla, 22 Wn. App. 2d 39, 45, 509 P.3d 832 (2022). "An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

Pursuant to RCW 26.09.191(3), a court may place limitations on a parent in the parenting plan if the parent has a "long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions" or if the parent has a "long-term emotional . . . impairment which interferes with the parent's performance of parenting functions." RCW 26.09.191(3)(b), (c). In determining whether a parent does or does not have a long-term impairment that interferes with their parenting functions, "the court shall apply the civil rules of evidence, proof, and procedure." RCW 26.09.191(6). As McKinley correctly conceded at oral argument, she bore the burden of proof as the party requesting restrictions.

Although the trial court did not enter written findings of fact and conclusions of law, the parenting plan and oral statements made by the trial court are sufficient for us to review this issue. In both the parenting plan and oral statements, the trial court noted that it found that .191 restrictions were not warranted. This is equivalent to a finding that McKinley had not met her burden of proof. McKinley asks us to disregard the trial court's finding in light of the evidence she presented of Sommer's use of illicit substances. McKinley, in essence, requests that this court reweigh the conflicting evidence and find that

Sommer had a long-term impairment that interfered with his parenting functions. Reweighing the evidence is not the role of the appellate court. Lewis v. Dep't of Licensing, 157 Wn.2d 446, 468, 139 P.3d 1078 (2006). We decline McKinley's invitation to do so now.

McKinley further asserts that the trial court did in fact find that she met her burden of proof in light of the trial court's oral statements that Sommer had used illicit substances. However, a finding that a parent has used illicit substances is not equivalent to a finding that a parent has a "long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions." RCW 26.09.191(3)(c). Furthermore, unlike subsections (1) and (2), which utilize the word "shall," subsection (3) states that a trial court "may" place limitations on a parent in the parenting plan. "When the legislature used certain language in one provision of a statute, and omits the same language in another, we presume it intended a difference in the two provisions." In re Parenting and Support of C.A.S., ___ Wn. App. 3d ___, 522 P.3d 75, 79 (2022) (citing State v. Beaver, 148 Wn.2d 338, 343, 60 P.3d 586 (2002)). Thus, even if a trial court finds that the parent has a long-term impairment, the trial court has discretion to not impose restrictions on the impaired parent. On the record presented, we cannot say that the trial court abused that discretion.

VII

McKinley asserts that the trial court erred by ordering her to provide her law practice's billing information to Sommer. This is so, she asserts, because the order requires her to divulge confidential information about her clients. Amici

make a similar assertion. However, as Sommer points out, the trial court entered a new child support order in September 2022 that removed the requirement that McKinley provide Sommer with any of her billing information. Additionally, the prior provision was written to go into effect only after J.S. entered preschool. J.S. had not yet started preschool when the child support order was modified. As such, the prior order never went and never will go into effect.

"An appeal is moot if 'the matter is "purely academic" such that the court cannot provide effective relief.'" Daybreak Youth Servs. v. Clark County Sheriff's Office, 19 Wn. App. 2d 879, 886, 498 P.3d 571 (2021) (internal quotation marks omitted) (quoting Ctr. for Biological Diversity v. Dep't of Fish & Wildlife, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020)). We do not typically review moot issues. Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). "Issuing an advisory opinion is allowable 'only on those rare occasions where the interest of the public in the resolution of an issue is overwhelming.'" Bloome v. Haverly, 154 Wn. App. 129, 141, 225 P.3d 330 (2010) (internal quotation marks omitted) (quoting To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 416, 27 P.3d 1149 (2001)).

Because the challenged provision in the prior child support order never went into effect and has since been removed, we can grant no relief to McKinley. Any opinion on the issue would be purely advisory. Despite amici's assertions to the contrary, there is no overwhelming public interest in addressing this issue under the circumstances present in this case. The provision entered in the original child support order appears to have arisen out of a unique concern about

whether McKinley was charging Sommer for childcare that was not work-related. This is a purely personal concern, not a matter of public interest. We accordingly decline to address this issue.

VIII

McKinley asserts that this matter must be assigned to a different judge on remand. This is so, McKinley contends, because Judge Kiesel subjected her to a higher burden of proof because she is an attorney, thereby violating appearance of fairness requirements. We disagree.

Reassignment to a new judge on remand may be appropriate if "the trial judge will exercise discretion on remand regarding the very issue that triggered the appeal and has already been exposed to prohibited information, expressed an opinion as to the merits, or otherwise prejudged the issue." State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014) (footnotes omitted). A party requesting reassignment on remand must demonstrate actual or potential bias of the judge who handled the initial proceeding. State v. Finch, 181 Wn. App. 387, 398-99, 326 P.3d 148 (2014) (citing In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000)). The remedy is a limited one: "even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally *not* available as an appellate remedy if the appellate court's decision effectively limits the trial court's discretion on remand." McEnroe, 181 Wn.2d at 387.

On remand, the trial court will be entering written findings of fact and conclusions of law based on the preexisting record. In order for the trial court to

17

do so, this matter *must* necessarily return to the judge that presided over the trial. See WESCO Distrib., Inc. v. M.A. Mortenson Co., 88 Wn. App. 712, 715-16, 946 P.2d 413 (1997) (successor judge cannot enter findings and conclusions in original judge's stead). The only issues to be addressed are those that we have determined to be presently unreviewable because of the absence of necessary findings and conclusions. We accordingly deny McKinley's request for reassignment to a new judge on remand.

IX

McKinley asserts that she should be awarded costs pursuant to RCW 26.09.140. Sommer requests that costs be awarded to him pursuant to RAP 14.2. We disagree with both parties and hold that neither party is entitled to an award of costs.

RCW 26.09.140 states that "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." In the parenting plan, the trial court ordered that both parties should bear their own fees and costs. We decline to exercise our discretion to order either party to bear the other's costs.

Furthermore, RAP 14.2 provides that costs may be awarded to a party that substantially prevails on review. Here, neither party has substantially prevailed, as the lack of written findings and conclusions preclude review of several issues raised on appeal. Accordingly, both parties should bear their own costs.

Affirmed in part and remanded.[10]

WE CONCUR:

---

[10] We are not remanding for a reference hearing.  See, e.g., RAP 16.11(b); RAP 16.12. After the necessary proceedings on remand take place, any aggrieved party may appeal from any appealable order as in the normal course.